799 F.2d 1442
 Dennis Wayne SMITH, Petitioner-Appellee,
v.
Louie L. WAINWRIGHT, Secretary Florida Department of
Offender Rehabilitation, Charles G. Strickland, Jr.,
Superintendent of Florida State Prison at Starke, Florida,
and Jim Smith, The Attorney General of the State of Florida,
Respondents-Appellants.
 No. 85-3943.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 8, 1986.
 
 Theda R. James, Asst. Atty. Gen., Tampa, Fla., for respondents-appellants.
 Patrick D. Doherty, Clearwater, Fla., Sondra Goldenfarb, Office of Capital Collateral Repre., St. Petersburg, Fla., for petitioner-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, HILL and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 The state appeals from the judgment of the district court granting the writ of habeas corpus in favor of petitioner Dennis Wayne Smith. The district court's judgment came after a hearing conducted by that court after its prior judgment had been vacated and the case remanded for such a hearing. Smith v. Wainwright, 741 F.2d 1248 (11th Cir.1984). The facts and background of proceedings in this matter are set out in that opinion.
 
 
 2
 As disclosed there, appellee Smith was convicted of a brutal and aggravated murder. The aggravated nature of the crime is not in dispute and clearly appears from the record. The contested issue at trial was whether or not appellee was the person who committed the crime.
 
 
 3
 The district court found, and we affirm, that, at his trial, Smith was deprived of evidence which was critical to the determination of his guilt or innocence. In short, the only witness whose testimony placed Smith at the scene of the crime and named him as a perpetrator was Wesley Irvin Johnson. It is undisputed that, when Johnson first voluntarily went to the police and confessed, he named himself as the principal perpetrator and made no mention of appellee Smith. At the same time that Johnson gave his statement to the police, another investigating officer interviewed his wife. She told the police that Johnson had told her about the murder, and related to the police what he had told her. She, like Johnson, made no mention of Smith. It is clear that Johnson did not initially incriminate Smith in any way. At the time of trial, a plea bargain had been struck with him under the terms of which he would escape the death penalty and be given a life sentence if he testified for the state in the case against Smith. At the time of the Smith trial, Johnson was awaiting sentence.
 
 
 4
 At no time during appellee's trial was the jury made aware of the fact that Johnson had given a detailed statement to the police confessing that he was the principal actor in the killing of the victim and making no assertion that Smith was either present or involved in the crime. At trial, Johnson testified that he was with Smith on the occasion of the murder; that Smith was the leading actor in the killing and that it was Smith who inflicted the wounds upon the victim, orchestrated the acquisition of gasoline, and saw to it that the automobile was set afire with the gasoline as incendiary material causing the death of the victim locked in the trunk.
 
 
 5
 In this case the only way for the defendant to prevail would have been successfully to impeach Johnson. It is true that some effort was made to impeach him. He was shown to be one whose integrity was questionable; he had confessed to three murders; he had struck a plea bargain with the state. But nothing came to light indicating that Johnson's story had ever been anything but that version which he told at trial.
 
 
 6
 The state put Mrs. Johnson on the stand to buttress Johnson's story. She testified that Johnson had implicated Smith when he first told her about the murders, before going to the police. This hearsay was admitted, over objection, as a prior consistent statement by Johnson, and was used to rebut the defense's attempts to impeach him.
 
 
 7
 The state's use of Mrs. Johnson's testimony to rehabilitate Wesley Irvin Johnson highlighted the emphasis that the state placed on his testimony. Moreover, the prosecution's recognition of the importance of a prior consistent statement illustrated the value and damaging power of the prior inconsistent statements which were never disclosed to the jury. Neither Johnson nor his wife were subjected to impeachment by their prior statements to the police, which were remarkably inconsistent with their trial testimony. This allowed the prosecutor, in his final argument, to say to the jury:
 
 
 8
 [Johnson] described to [Mrs. Johnson] after she got him to talk about it ... just exactly what he told the officers all along, what he told you here today. Just exactly.... He told her the story; he told the police officers the story; and told you the same story.
 
 
 9
 We need not tarry long in determining whether or not the failure of counsel to have impeached Johnson or his wife with their prior statements was prejudicial to Smith's defense. The jury was permitted to believe that Johnson's testimony against Smith was consistent with what he had told the police from the outset and subject to belief for that reason, in spite of his character defects, when the undisclosed truth was that his testimony at trial conflicted remarkably with his first detailed statement both in its content and in what was omitted. Mrs. Johnson's testimony was similarly unimpeached despite the availability of an inconsistent statement.
 
 
 10
 As noted on the earlier appeal, issues arose as to whether Smith's attorney had possession of the prior statement of Smith and, by failing to use it for impeachment, rendered ineffective assistance to his client or whether the state had failed to disclose the statement in spite of the mandate of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court found, after hearing, that there had not been a Brady violation but that counsel's representation had been inadequate. This finding is supported by the evidence.
 
 
 11
 The conviction rested upon the testimony of Johnson. His credibility was the central issue in the case. Available evidence would have had great weight in the assertion that Johnson's testimony was not true. That evidence was not used and the jury had no knowledge of it. There is a reasonable probability that, had their original statements been used at trial, the result would have been different.[1] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See United States v. Bagley, 641 F.2d 1235 (9th Cir.1981) cert. denied 454 U.S. 942, 102 S.Ct. 480, 70 L.Ed.2d 251.
 
 The judgment of the district court is
 
 12
 AFFIRMED.
 
 
 
 [1]
 The district judge read our opinion on the earlier appeal as amounting to our holding, on that appeal, that the absence of the prior inconsistent statements of Mr. and Mrs. Johnson was prejudicial. While we acknowledge that what we wrote might well have been subject to that interpretation, it was not our intention to preclude the district court from determining prejudice vel non at the hearing on remand. However, the over broad reading of our first opinion is of no moment. At the hearing, the parties were permitted to present evidence and argument on the question of prejudice and no party was denied the opportunity to do so. The petitioner, appellee Smith, did present expert opinion testimony that the absence of proof that the only witness naming Smith as the murderer had previously given a detailed statement to the police inconsistent with that testimony and to his wife prejudiced the defense. On the record created at that hearing, only one resolution of the prejudice issue would have been available to the district court. A finding of prejudice was fully supported by the evidence and a finding of no prejudice could not have been sustained