**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darlene SPAN; Jerry Span,**
**Defendants–Appellants.**

**Nos. 94–10238, 94–15997.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1995.

Decided Feb. 2, 1996.

Darlene and Jerry Span, Phoenix, Arizona, Pro pers, defendants-appellants, and Chadwick M. Cord, Phoenix, Arizona, for defendants-appellants.

Paul V. Rood, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee.

Before: GIBSON,* GOODWIN, and HUG, Circuit Judges.

HUG, Circuit Judge:

Darlene and Jerry Span, sister and brother, were each convicted in federal court of assaulting a federal officer in violation of 18 U.S.C. § 111.[1] Their convictions were affirmed on direct appeal, *United States v. Span*, 970 F.2d 573 (9th Cir.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1283, 122 L.Ed.2d 676 (1993), and they now appeal pro se the district court's denial of their petition for a writ of coram nobis under 28 U.S.C. § 1651, and their motion to vacate their federal sentences under 28 U.S.C. § 2255.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's denial of the Spans' section 2255 motion. We find that the Spans were denied their Sixth Amendment right to effective assistance of counsel due to their trial counsel's failure to offer proper jury instructions, and their counsel's failure to object to misleading instructions.[2]

I.

The Spans own a building supply store in Phoenix, Arizona. On April 7, 1988, two federal marshals, David Dains and Garry Grotewold, appeared at the Spans' store in search of a fugitive, Mickey Michael. The Spans have a brother by that name, and the marshals were mistakenly informed that the brother was the fugitive for whom they searched.

The trial produced two very different versions of events. Two witnesses testified for the defense: Kerrie Rogers and Helen Brock. Neither knew the Spans personally. They were both customers at the Spans' store who were shopping that day and happened to witness the encounter between the Spans and the marshals. They testified that the marshals drove up to the Spans' store and approached Ms. Span. She met and greeted them. They showed her a wanted flyer, and asked her if she knew the subject. Ms. Span said she did not know the person

---

* Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

1. Section 111 reads, in relevant part, "Whoever ... forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties, ... shall ... be fined under this title or

imprisoned not more than ... three years, or both." (West Supp.1995).

2. The Spans raise a number of additional errors that they argue merit reversal of their convictions. Because we find that the Spans are entitled to relief on the jury instruction issues, we need not address their other claims.

on the flyer. They started arguing, and the marshals accused Ms. Span of hiding the fugitive. Ms. Span insisted that she did not know the person on the flyer. She offered to make a copy of the flyer to pass around, but the marshals refused. Mr. Span then approached and asked Ms. Span what was happening. Ms. Span read the flyer to Mr. Span, he said he did not know the fugitive, and they returned the flyer to the marshals and asked them to leave. The Spans said they were busy and that they couldn't help the marshals anymore, and they began to walk away.

At that point, Marshal Dains ran up to Ms. Span, grabbed her from behind by her ponytail, and threw her against a fence. They both fell to the ground, with Ms. Span trying to get Marshal Dains' hands off her hair. In the scuffle, Dains broke his glasses, which cut and scratched his face. He then dragged Ms. Span backwards, picked her up and pushed her against a car and held her in a chokehold until local police arrived. Marshal Grotewold tackled Mr. Span from behind. "He just come down with a karate chop to the back of his head and his knee and hit him and that was the end of Jerry." [3] [RT Mar. 2, 145]. Marshal Grotewold threw Mr. Span to the ground, then picked him up, threw him on the car and held him in a chokehold until the local police arrived.

The two marshals told quite a different story at trial. They testified that it was Ms. Span who attacked Marshal Dains from behind, clawed his face, and popped his knee. Only after Ms. Span attacked first did Marshal Dains move her onto the car to more easily handcuff her. Similarly, they testified that Mr. Span hit Marshal Grotewold in the chest, and only after feeling what he thought was Mr. Span going for his gun did Marshal Grotewold strike Jerry. The marshals testi-fied that they identified themselves as such; the defense witnesses testified to the contrary. The Spans did not testify.[4]

After receiving the adverse verdict, the Spans filed a motion for a new trial, which was denied. Their conviction was affirmed. *Span*, 970 F.2d 573. We found error in the jury instructions, but did not reverse because trial counsel had waived the error. The Spans filed a *coram nobis* petition, and then a section 2255 motion to vacate the judgment. The district court ruled on the petition and motion together, denying both and vacating the stay of their sentences. The Spans now appeal the denial of their *coram nobis* and section 2255 petitions.

## II.

Coram nobis relief is available only if, *inter alia*, "a more usual remedy is not available." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987). In this case a more usual remedy, under section 2255, is available.[5] We thus convert the Spans' *coram nobis* petition into a section 2255 petition. *See Baker v. United States*, 932 F.2d 813, 814 (9th Cir.1991) (court may construe a *coram nobis* petition as a section 2255 motion). We review the district court's denial of a section 2255 motion *de novo*. *Doganiere v. United States*, 914 F.2d 165, 167 (9th Cir.1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 454 (1991). We review factual findings for clear error. *Id.*

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). " 'An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.' " *Frazer v.*

---

**3.** Jerry Span is 5'5" and 118 pounds. According to the Spans' opening brief, Grotewold is at least 6', and between 200 and 300 pounds. [Bl. Br. at 6].

**4.** One of the Spans' claims, which we do not reach, is that their trial counsel waived, against their will, their constitutional right to testify in their own defense.

**5.** The Spans' sentences of probation meet the "in custody" requirement for section 2255 jurisdic-tion. *See United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1470 (9th Cir.1988), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). They are eligible for section 2255 relief even though their sentence was stayed at the time of filing their petition for collateral review. *See Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973).

*United States,* 18 F.3d 778, 782 (9th Cir.1994) (quoting *Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063). To prevail on a claim of ineffective assistance of counsel, petitioner must show 1) his attorney's performance was unreasonable under prevailing professional standards; and 2) there is a reasonable probability that but for counsel's unprofessional errors, the results would have been different. *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). "*Strickland* defines a reasonable probability as 'a probability sufficient to undermine confidence in the outcome.'" *Id.*

 Claims of ineffective assistance of counsel can be raised for the first time on a section 2255 motion. *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). We review ineffective assistance of counsel claims de novo. *United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991).

A. *Performance*

 Our review of counsel's performance is highly deferential. *United States v. Cochrane,* 985 F.2d 1027, 1030 (9th Cir.1993). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy. *United States v. Molina,* 934 F.2d 1440, 1447 (9th Cir.1991).

Although the Spans allege numerous errors by their trial counsel, we reverse because of counsel's bungled handling of the jury instructions and do not reach the other issues. We find that the defense counsel's conduct with respect to the jury instructions was unreasonable and far below prevailing professional standards. *See Gray v. Lynn,* 6 F.3d 265, 269 (5th Cir.1993) (holding that "the failure of [defendant's] counsel to object to the erroneous instruction cannot be considered to be within the 'wide range of professionally competent assistance.'") (quoting *Ricalday v. Procunier,* 736 F.2d 203, 207 (5th Cir.1984)); *Patterson v. Dahm,* 769 F.Supp. 1103, 1107–13 (D.Neb.1991) (proposing erroneous jury instruction on lesser included of-

fense constituted ineffective assistance of counsel).

The erroneous jury instructions were the subject of the direct appeal. We held that while there was error—defendants lost an opportunity to instruct the jury on an important affirmative defense—trial counsel failed to preserve the issue for appeal and the conviction was affirmed.

There were four affirmative defenses at issue in the trial. The first was general self-defense. Defendants offered an instruction based on Ninth Circuit Model Instruction 6.05 (West 1989): "The defendants have offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force." [Defendant's No. 10].

The second theory of defense was based on a mistake of fact that would negate general intent—that is, that the Spans did not know that the two marshals were federal officers. The defendants offered the following instruction:

The Defendants' state of knowledge may be a relevant consideration under the crime charged. The crime upon which Jerry Span and Darlene Span have been charged does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent. [Defendants' No. 15].

The district court rejected these two instructions, and instead substituted a more specific "self-defense" instruction, based on Ninth Circuit Model Instruction 8.02B (West 1989), which included a requirement that de-

fendants not know that the two marshals were in fact federal officers:

> The defendants have offered evidence of having acted in self-defense. It is a defense to the charge as to a particular defendant if, (1) the defendant did not know that Garry Grotewold and David Dains were federal officers, (2) that defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force, and (3) that defendant used no more force than appeared reasonably necessary in the circumstances.

> But force which is likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.

> In addition to proving all the elements of the crime beyond a reasonable doubt, the government must also prove beyond a reasonable doubt either (1) that the defendants knew that Garry Grotewold and David Dains were federal officers or, (2) that the defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force, or (3) that the defendants used more force than appeared reasonably necessary in the circumstances. [Government's Requested Inst. No. 37].

This instruction was based on *United States v. Feola*, 420 U.S. 671, 685, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975), which held that specific intent to assault a *federal officer* is not an element of 18 U.S.C. § 111, although "an honest mistake of fact [as to the officer's status] would not be consistent with criminal intent." *Id.* at 686, 95 S.Ct. at 1264. The trial court preferred this instruction to the two offered by defense counsel because it found defendants' general self-defense instruction too broad and not specifically tailored to an arrest situation, and it found that defendants' mistake of fact instruction was essentially covered by the court's *Feola* instruction. Defense counsel did not object to

the substitution,[6] and the *Feola* instruction was read to the jury.

The third defense theory was that the Spans had the right to resist an unlawful arrest, and the arrest in this case was unlawful because the officers had no probable cause. Defense counsel offered instructions to this effect, allegedly based on *United States v. Moore*, 483 F.2d 1361, 1364–65 (9th Cir.1973). The offered instructions read:

> If the United States Marshals had no right to arrest, Jerry Span and/or Darlene Span might resist the illegal attempt to arrest them, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest. One has an undoubted right to resist an unlawful arrest. [Defendants' No. 12].

> The privilege to resist an unlawful arrest is available only if the arrest was "unlawful." [Defendants' No. 13].

> In order for an arrest to be lawful, it must be based upon probable cause.

> Probable cause at the time of arrest is determined by examining whether at the moment the facts and circumstances within the Marshals' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense. Suspicious conduct is not enough. Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities. [Defendants' No. 14].

The trial court rejected these *Moore* instructions because it held that, after *Feola*, they no longer stated good law. Defense counsel objected specifically to their exclusion, but the appellate court affirmed the district court ruling.

The fourth and final defense was the excessive force defense. The theory is that a person has a right to resist an officer who is using excessive force. This differs from the *Feola* defense in that the *Feola* defense requires ignorance of the fact that the "vic-

---

**6.** Counsel for Jerry Span stated in the jury instruction conference, "Your Honor, I would have no objection to the Court giving 37 as opposed to ten if that's the Court's inclination." [Tr. at 201–02].

tims" are officers, whereas the excessive force theory does not. It differs from the unlawful arrest defense in that there is no right to resist an unlawful arrest simply because it is unlawful, e.g., without probable cause, whereas there is a right to resist an excessive use of force by an officer. No instruction on this defense was offered by counsel, given by the court, or argued to the jury. The Spans argue that this would have been the winning defense, which seems likely.

On appeal, the panel held that the trial court's *Feola* instruction precluded acquittal based on an excessive force theory of defense: "As the Spans point out, the model instruction [given by the court] requires the jury to reject this [excessive force] theory of defense as long as the government proves beyond a reasonable doubt that the defendant knew that the person she is charged with assaulting was a federal law enforcement officer." *Span*, 970 F.2d at 577. We refused to reverse the conviction on this ground, however, because counsel "did not object to the district court's decision to give [the *Feola* instruction] in place of the Span's general self-defense instruction." *Id.* We further refused to find plain error because counsel "offered no such [excessive force] instruction, and they did not rely on this theory of defense at trial." *Id.* at 578. Counsel argued on appeal that "the general self-defense instruction that they offered was broad enough to encompass an excessive force theory of defense," and "[d]uring the district court's conference with counsel on jury instructions, defense counsel asserted that one of its theories of defense was that the Spans defended themselves reasonably from excessive force used by the marshals." But we found that "[a]n assertion made by defense counsel in chambers about their theory of defense is not the same as presenting a case to the jury based on that theory." *Id.*

We also affirmed the district court's ruling that defendants' third theory of defense—the right to resist an arrest not based on probable cause—is not a correct statement of the law. Although agreeing with defendants that *Feola* did not overrule *Moore* in this respect, we nonetheless found that defendants had

misread *Moore*. The right of self-defense "is not triggered by the absence of probable cause, but rather by the officer's bad faith or provocative conduct." *Id.* at 580. We pointed out that defense counsel should have "propose[d] an instruction stating that officers engaged in a personal frolic are not entitled to the protection of section 111." *Id.* at 581 & n. 8.

 It thus is clear that counsel inadvertently lost the Spans' their excessive force defense by failing to request an instruction that the Spans' self-defense in the face of an excessive use of force by the marshals is an affirmative defense. Moreover, they failed to request an instruction explaining an element of the offense, that excessive use of force in the pursuit of official duty is not considered a good faith performance of official duties within the definition of section 111. And counsel failed to establish a foundation for an excessive force defense, which would at least have allowed the Spans to obtain reversal on appeal. In addition, counsel failed to object to the trial court's *Feola* instruction, which had the effect of negating any excessive use of force defense that the jury could have implied from the elements of the statute because it required the jury to find that the Spans' did not know Dains and Grotewold were federal officers before allowing the Spans any right of self-defense.

The Government characterizes defense counsel's conduct at trial as a strategic decision to present a self-defense, rather than an excessive force defense, to the jury. *See Cochrane*, 985 F.2d at 1027. They argue that this was sound trial strategy, and quote *Strickland* for the proposition that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066.

 But the fact that counsel did not request an excessive force instruction, or lay a foundation for such an instruction, does not necessarily mean that this was a strategic decision. " 'The label of "trial strategy" does not automatically immunize an attorney's performance from sixth amendment challenges.' " *Patterson*, 769 F.Supp. at 1110 (quoting *Kellogg v. Scurr*, 741 F.2d 1099,

1102 (8th Cir.1984)). Unlike *Butcher v. Marquez,* 758 F.2d 373, 377 (9th Cir.1985), in which the court found no ineffective assistance of counsel where the record showed that counsel deliberately chose not to request a specific instruction, and the record showed that the omission was reasonable, the record in this case shows that counsel intended to present an excessive force defense but failed. Counsel's errors with the jury instructions were not a strategic decision to forego one defense in favor of another. They were the result of a misunderstanding of the law. *Martinez–Macias v. Collins,* 810 F.Supp. 782, 786 (W.D.Tex.1991), *aff'd,* 979 F.2d 1067 (5th Cir.1992) (finding defense counsel's strategy unreasonable, and thus grounds for ineffective assistance of counsel, where the law was not well researched).[7]

Counsel stated in the jury instruction conference that he thought the unlawful arrest instruction also covered the excessive force defense. Thus, even if *Feola* overruled the unlawful arrest defense, counsel argued that the instruction should still be given to cover the excessive force defense. Although the trial court rejected this argument and denied the unlawful arrest instruction, counsel for some reason failed to propose a new instruction to cover an excessive force defense more narrowly.

We have a hard time seeing what kind of strategy, save an ineffective one, would lead a lawyer to deliberately omit his client's only defense, a defense that had a strong likelihood of success, and a defense that he specifically stated he had every intention of presenting.

### B. *Prejudice*

■ To prevail on their ineffective assistance of counsel claim, the Spans must also show that the "deficient performance" described above "prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "This requires showing that counsel's errors

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

■ The Government calls it speculative that the jury would have acquitted if an excessive force theory had been presented. On the contrary, we find a "reasonable probability" that, had the jury been properly instruction, the Spans would have been acquitted.[8] The instructions as given were quite misleading. Not only was the excessive force instruction omitted, but such a defense was specifically precluded by the *Feola* instruction that was given, which mistakenly led the jury to believe that the only defense to the crime was ignorance of the officers' status. *See Gray,* 6 F.3d at 270–71 (finding prejudice where jury was erroneously instructed, even though both the prosecutor and defense counsel argued the correct law to the jury).

■ Given the facts to which the two independent defense witnesses testified, it is highly likely that a properly instructed jury would have found that the Spans were not the first aggressors, but only defending themselves against an excessive and outrageous use of force by the marshals. It is also highly likely that the instructions as given led the jury to believe that, regardless of the amount of force used by the marshals, the Spans had no legal right to do anything except submit to a beating. It is well-settled that "juries are presumed to follow their instructions." *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). We thus find that the Spans were prejudiced by their counsel's deficiencies.

### CONCLUSION

The Spans have been deprived of their Sixth Amendment right to effective assistance of counsel. We thus reverse the dis-

---

7. While in *Martinez–Macias* defense counsel was paid $11.84 per hour by the state and "the justice system got only what it paid for," 979 F.2d 1067, in this case the Spans paid their lawyers $50,-000, and, we dare say, did not get their money's worth. [RT May 30, 1990 at 3].

8. The Spans offer jurors' statements as evidence that the jurors misunderstood the applicable law and would have acquitted if they had been properly instructed. But Federal Rule of Evidence 606(b) bars the use of a juror's "mental processes" to inquire into the validity of a verdict.

trict court order denying the section 2255 motions and vacate their federal convictions.

While we recognize that not every instance of counsel's ineffective handling of the jury instructions requires vacation of the underlying conviction, the egregiousness of the facts and the magnitude of trial counsel's incompetence in this case require that we do so.

**REVERSED.**