113 F.3d 1243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin HERRERA-ZULETA, Defendant-Appellant.
 No. 96-15146.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 11, 1997.
Decided May 2, 1997.
 
 Before: SCHROEDER, ALARCN, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Benjamin Herrera-Zuleta appeals from the denial of his motion to vacate his sentence under 28 U.S.C. § 2255. He seeks reversal on the following grounds:
 
 
 3
 One. The district court erred in ruling that Herrera-Zuleta failed to demonstrate that he was deprived of his right to effective representation because his trial counsel had an actual conflict of interest due to counsel's representation of Fernando Fernandez in a prior criminal prosecution arising out of the same alleged conspiracy to import cocaine from Bolivia.
 
 
 4
 Two. The district court erred in ruling that the Government did not deprive Herrera-Zuleta of his right to due process by violating its stipulation to disclose statements made by Herrera-Zuleta during the course of the conspiracy prior to their use at trial.
 
 
 5
 Three. The district court erred in ruling that Herrera-Zuleta was not deprived of his Sixth Amendment right to counsel because his attorney failed to object to the introduction of statements made by Herrera-Zuleta during the course of the conspiracy in violation of the stipulation.
 
 
 6
 We affirm because we conclude that Herrera-Zuleta has failed to demonstrate that an actual conflict of interest existed between him and his trial counsel. We also hold that Herrera-Zuleta was not deprived his right to due process or his Sixth Amendment right to the effective assistance of counsel.
 
 
 7
 * Herrera-Zuleta contends that the district court erred in determining that he was not denied effective assistance of counsel because of his trial counsel's prior representation of Fernando Fernandez in a criminal prosecution arising out of the same conspiracy to import cocaine from Bolivia. We review a claim of ineffective assistance of counsel de novo. United States v. Span, 75 F.3d 1383, 1387 (9th Cir.1996).
 
 
 8
 "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Garcia v. Bunnell, 33 F.3d 1193, 1198 (9th Cir.1994) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)), cert. denied, 115 S.Ct. 1374 (1995). "Conflicts of interest can arise both in cases of simultaneous and successive representation." Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir.), cert. denied, 488 U.S. 908 (1988).
 
 
 9
 Herrera-Zuleta asserts that his attorney had an actual conflict based on his successive representation of two persons charged with participation in the same criminal activity. A showing of successive representation is not sufficient to demonstrate an actual conflict of interest. United States v. Rewald, 889 F.2d 836, 858-59 (9th Cir.1989), amended by 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990). "An actual conflict, as opposed to the 'mere possibility of a conflict,' is necessary to establish ineffective assistance." Sanders v. Ratelle, 21 F.3d 1446, 1452 (9th Cir.1991) (quoting Morris v. California, 966 F.2d 448, 455 (9th Cir.1991), cert. denied, 506 U.S. 831 (1992)). To support a showing of actual conflict, the record must contain evidence that the alleged conflict affected the attorney's behavior. See Burger v. Kemp, 483 U.S. 776, 784-85 (1986) (holding that the record must contain facts demonstrating the "lawyer's improper motivation" to support a determination that an actual conflict of interest exists).
 
 
 10
 Herrera-Zuleta argues that Mr. Gentile admitted at the section 2255 evidentiary hearing that his former representation of Fernando Fernandez resulted in a conflict of interest with his duty to Herrera-Zuleta. He relies on the following portion of Mr. Gentile's testimony.
 
 
 11
 If I had known pretrial that Raul Reyes was going to be a witness for the Government, I don't think there's any question about the fact that I would have thought through this issue and would have come to the conclusion that I had a conflict of interest unless Fernando Fernandez would waive it.
 
 
 12
 Herrera-Zuleta maintains that "[t]rial counsel's own admission belies the lower court's finding that no actual conflict of interest existed." Appellant's Opening Br. at 14. Mr. Gentile's hindsight assessment of his professional responsibility to Herrera-Zuleta is not binding on this court. "The existence of an actual conflict cannot be governed solely by the perceptions of the attorney; rather, the court itself must examine the record to discern whether the attorney's behavior seems to have been influenced by the suggested conflict." Sanders, 21 F.3d at 1452. We have examined the entire record of the evidentiary hearing. It does not support Herrera-Zuleta's contention that Mr. Gentile's conduct of the defense of Herrera-Zuleta was influenced by his prior representation of Fernando Fernandez.
 
 
 13
 Herrera-Zuleta maintains that Mr. Gentile's prior representation of Fernandez precluded him from calling Fernandez to impeach the Government's witness, Reyes. Herrera-Zuleta argues that Fernandez would have "fatally impeached" Reyes' testimony in the following respects:
 
 
 14
 One. Fernandez would have testified that he and Reyes conspired to kill a government witness.
 
 
 15
 Two. Fernandez would have testified he had "never even heard Herrera's name" and that Reyes did not mention the names "Benjamin Herrera," "Ben," or the nickname "Cachaco" in any conversation.
 
 
 16
 Three. Fernandez did not know that Herrera-Zuleta participated in transporting cocaine to Las Vegas.
 
 
 17
 Herrera-Zuleta has failed to demonstrate that Mr. Gentile's failure to call Fernandez was caused by Mr. Gentile's successive representation. The record shows that Reyes was called as a last-minute witness, and that neither side contacted Fernandez or sought his testimony. Mr. Gentile testified that had he had time to think about it, he might have been able to obtain a waiver from Fernandez. The reason Fernandez did not testify had nothing to do with Mr. Gentile's successive representation; rather it was because Mr. Gentile had no time to call him in any event. The successive representation therefore had no effect on Mr. Gentile's performance.
 
 
 18
 Moreover, Herrera-Zuleta has not demonstrated that Fernandez's failure to testify affected him adversely. Herrera-Zuleta's contention that Fernandez would have impeached Reyes' credibility by testifying that they were involved in a conspiracy to kill a government witness is directly contrary to the evidence produced at the section 2255 evidentiary hearing. Fernandez testified that Reyes was not involved in any plan to kill a government witness. Instead, Fernandez testified that a person named Juan Farinas attempted to entrap him into a conspiracy to kill Orlando Ruello. Fernandez testified that after hearing Farinas testify, the Government dismissed the charges arising out of the alleged conspiracy to kill a government witness. When asked whether he would have "provided any information to help the Court with respect to [Reyes] credibility or believability," Fernandez replied: "In my opinion [Reyes is] a good person, a serious person."
 
 
 19
 Fernandez also testified that Reyes did not mention the names "Benjamin," "Benjamin Herrera," or "Cachaco" in his presence. He also testified that he was aware that Reyes went to Miami but Reyes did not discuss with him what happened during his stay in Florida.
 
 
 20
 Fernandez's testimony would not have served to impeach Reyes. Reyes testified that he had never met Herrera-Zuleta, and did not know his last name. He also stated that the acquisition of the airplane on January 10, 1985, and its use to import cocaine to Las Vegas was deliberately not discussed in Fernandez's presence to keep him ignorant of the details of that transaction. The fact that Reyes had not referred to "Ben," "Benjamin," or "Cachaco" would have had little probative value as impeaching evidence in light of the fact that Reyes testified he did not discuss the details of the January 15, 1985 flight in Fernandez's presence. The fact that Reyes did not refer to "Ben," "Benjamin," or "Cachaco" in Fernandez's presence, does not tend to prove that Reyes lied when he testified that Fiallo used those names in identifying the person who would acquire the airplane.
 
 
 21
 Mr. Gentile testified that the fact that he previously represented Fernandez at a trial arising out of the same conspiracy was advantageous to his representation of Herrera-Zuleta because he knew the Government's theory, and was in a position to bring any variation to the jury's attention. Mr. Gentile opined that "[i]t was almost as if you had a chance to take depositions in a criminal case." Herrera-Zuleta has failed to demonstrate that Mr. Gentile's successive representation adversely affected his performance.
 
 II
 
 22
 Herrera-Zuleta asserts that the failure of the prosecutor to inform the trial judge that Mr. Gentile had previously represented Fernandez was egregious misconduct. We disagree. The calling of Reyes as a prosecution witness did not of itself create a conflict of interest. Mr. Gentile had not previously represented Reyes in charges arising out of the conspiracy to use an airplane to transport cocaine to Las Vegas on January 15, 1985. When Reyes testified that he told Fernandez that Fiallo was planning to use an airplane to transport cocaine to Las Vegas, Mr. Gentile informed the court at side bar that he had previously represented Fernandez at a trial arising out of the same conspiracy.
 
 
 23
 Reyes' testimony that he told Fernandez that Fiallo planned to use an airplane did not inculpate Herrera-Zuleta. This conversation occurred in October of 1984, more than two months before Herrera-Zuleta arranged the acquisition of an airplane at the January 10, 1985 meeting in Florida. Neither Reyes nor Fernandez were present at this meeting. Neither Reyes nor Fernandez ever met Herrera-Zuleta, or engaged in any conversation with him. Thus, Reyes and Fernandez could not offer any admissible evidence regarding Herrera-Zuleta's statements or conduct in furtherance of the alleged conspiracy. The fact that someone identified himself to Reyes over the telephone as "Ben," "Benjamin," or "Cachaco" did not tend to prove that Herrera-Zuleta was the party who initiated the phone calls. No evidence was presented that Reyes was able to identify Herrera-Zuleta's voice. He had never met him.
 
 
 24
 Reyes' testimony did not reveal any conflict of interest regarding Mr. Gentile's successive representation of Fernandez and Herrera-Zuleta. The district court properly inquired of Mr. Gentile whether his continued representation of Herrera-Zuleta presented any problem in light of the prosecutor's representation that he did not intend to call Fernandez as a prosecution witness. Mr. Gentile represented to the court that he would proceed without withdrawing as Herrera-Zuleta's counsel because he did not "see any need to impeach Mr. Fernandez."
 
 
 25
 Herrera-Zuleta has not cited any authority binding on this court which requires the government to bring potential defense conflicts to the court's attention on the government's own initiative, when the defense has failed to do so. Moreover, even if the government erred in not bringing Mr. Gentile's successive representation to the court's attention, Herrera-Zuleta has not shown any harm from the error. As previously discussed, Mr. Gentile did not have an actual conflict of interest that adversely affected his performance. Because his attorney had no actual conflict, Herrera-Zuleta suffered no harm from the failure of the government to call attention to a mere potential conflict.
 
 III
 
 26
 Herrera-Zuleta contends that the Government's failure to disclose statements made by Herrera-Zuleta in violation of a discovery stipulation deprived him of his right to due process. Herrera-Zuleta also contends that the Government's violation of the discovery stipulation agreement denied his Fifth Amendment right to a fair trial. The Government asserts that this claim is procedurally barred because he failed to raise it on direct appeal. The Government has waived this argument, however, by failing to raise it in the district court. Gonzalez v. United States, 33 F.3d 1047, 1049 (9th Cir.1994).
 
 
 27
 The discovery stipulation provides in pertinent part:
 
 
 28
 The Government represents that the only statements of the defendant known to the Government are the statements made at Opa Locka airport on January 10, 1985. Complete discovery concerning such statements has previously been provided to the defense. In the event other statements of the defendant become known to the Government, they will be revealed to the defense prior to their use as evidence in this case.
 
 
 29
 Herrera-Zuleta asserts that the Government violated this stipulation by introducing evidence of Fiallo's statement to Reyes in October after Fillo met with "Ben," or "Benjamin," and Reyes' testimony that a telephone caller identified himself as "Ben," "Benjamin," or "Cachaco," without prior disclosure to his defense counsel. Herrera-Zuleta's counsel did not object to this testimony at trial. We review a claim of prosecutorial misconduct for plain error where no objection was made in the trial court. See United States v. Olano, 507 U.S. 725, 731 (1993) (holding that the plain error doctrine applies to claims of prosecutorial misconduct).
 
 
 30
 In applying the plain error standard, we must first determine whether any error has been demonstrated. If no legal rule has been violated, there is nothing to review. Id. at 732-34. If error is shown, it cannot be reviewed on appeal unless it is clear or obvious. Id. at 734. Finally, the error must have been prejudicial. It must have affected the outcome of the trial. Id. Herrera-Zuleta has failed to meet his burden under each of these tests. Reyes' testimony regarding Fiallo's visit to Benjamin's house in South Miami did not contain any oral or written assertion by Herrera-Zuleta. See Fed.R.Evid. 801 ("A 'statement' is ... an oral or written assertion.").
 
 
 31
 The stipulation was entered into in response to Herrera-Zuleta's motion for the "Production of Statements of the Defendant Made Directly or Vicariously." Before this court, Herrera-Zuleta argues for the first time that the word "statements" includes the names used to identify himself by the person who telephoned Fiallo on January 15, 1985. It is not clear or obvious from reading the stipulation that the word "statement" was intended to include a name used by a person who makes a telephone call. Both the prosecutor and Mr. Gentile informed the court at the section 2255 proceedings that, when the evidence of the telephone calls was introduced, they did not consider such proof as violative of the terms of their stipulation. At best, this testimony served to corroborate the testimony of other witnesses who identified Herrera-Zuleta as a conspirator in the plan to import cocaine from Bolivia. Herrera-Zuleta has failed to demonstrate that the admission of this testimony was prejudicial.
 
 IV
 
 32
 Herrera-Zuleta asserts that Mr. Gentile's failure to object to the Government's alleged violation of the discovery stipulation deprived him of his right to the effective assistance of counsel. We review a claim of ineffective assistance of counsel de novo. United States v. Span, 75 F.3d 1383, 1387 (9th Cir.1996).
 
 
 33
 A person claiming ineffective assistance of counsel must demonstrate that his or her attorney's performance was deficient and that counsel's errors were prejudicial. Strickland v. Washington, 466 U.S. 68, 687-90 (1984). To find prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As discussed above, Herrera-Zuleta has failed to demonstrate that the prosecutor violated the discovery stipulation, or that the introduction of Reyes' testimony concerning Fiallo's statements and the telephone calls was prejudicial.
 
 V
 
 34
 In his reply brief, Herrera-Zuleta for the first time contends that "this case involves ineffective assistance of appellate counsel." Appellee's Reply Br. at 7. "The general rule is that appellants cannot raise a new issue for the first time in their reply briefs." Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990) (citing Northwest Acceptance Corp. v. Lynwood Equip., 841 F.2d 918, 924 (9th Cir.1987)). Accordingly, we hold that this claim was waived.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3