141 F.3d 1175
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joseph A. GALLO, Petitioner--Appellant,
v.
Peggy L. KERNAN, Warden, Respondent--Appellee.
 No. 96-16835.
D.C. No. CV-94-20603-RPA.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1997.
Decided Feb. 11, 1998.
 
 Appeal from the United States District Court for the Northern District of California Robert P. Aguilar, District Judge, Presiding.
 Before ALDISERT,** D.W. NELSON, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Joseph A. Gallo appeals the district court's dismissal of his petition for habeas corpus relief. Gallo was convicted in 1986 of several sexual offenses against his wife, Valerie Wright. He seeks to overturn his convictions on the grounds that (1) he was denied effective assistance of counsel and (2) his defense was prejudiced by prosecutorial misconduct. We have jurisdiction pursuant to 28 U.S.C. sections 1291 and 2253, and we affirm.
 
 
 3
 Because the parties are familiar with the facts of the case, we will not review them here.
 
 STANDARD OF REVIEW
 
 4
 This Court reviews de novo whether a defendant received ineffective assistance of counsel. United States v. McMullen, 98 F.3d 1155, 1157 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2444, 138 L.Ed.2d 203 (1997); United States v. Span, 75 F.3d 1383, 1387 (9th Cir.1996). This Court also reviews de novo whether the prosecutor improperly suppressed exculpatory evidence. United States v. Hernandez, 109 F.3d 1450, 1454 (9th Cir.1997).
 
 ANALYSIS
 
 5
 I. Gallo's Ineffective Assistance of Counsel Claim
 
 
 6
 Gallo claims that he received ineffective assistance of counsel as a result of his trial counsel's failure to introduce evidence of six prior "inconsistent" statements made by Valerie Wright, whose trial testimony constituted the only evidence in support of the sexual offense charges at issue on this appeal. A defendant claiming ineffective assistance of counsel must demonstrate (1) that his attorney's actions were outside the wide range of professionally competent assistance, and (2) that those actions prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Johnson v. Baldwin, 114 F.3d 835, 837-38 (9th Cir.1997).
 
 
 7
 A. Trial counsel's actions were reasonable under the circumstances.
 
 
 8
 In evaluating whether Gallo's defense was unconstitutionally deficient, we must accord a high degree of deference to trial counsel's judgment. Strickland, 466 U.S. at 689; Span, 75 F.3d at 1387. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Nonetheless, an attorney's performance is not immunized from Sixth Amendment challenges simply by attaching to it the label of "trial strategy." Span, 75 F.3d at 1389. Indeed, "[c]ertain defense strategies may be so ill-chosen that they may render counsel's overall representation constitutionally defective." United States v. Tucker, 716 F.2d 576, 586 (9th Cir.1983).
 
 
 9
 Thus, in order to evaluate Gallo's claim of ineffective assistance, it is necessary, first, to determine whether his counsel's decision not to introduce the prior "inconsistent" statements was a strategic choice and, second, to assess the reasonableness of that choice.
 
 
 10
 1. The omission of the evidence at issue was a strategic choice by Gallo's trial counsel.
 
 
 11
 Gallo first brought his ineffective assistance claims before the state trial court, on his motion for a new trial. At that hearing, Gallo's trial counsel, Ingo Brauer, stated that he was aware of inconsistencies between Wright's testimony at trial and some of her earlier statements. He made clear, however, that "it was a tactical decision on [his] part not to go into [the inconsistencies between the taped transcript and the trial testimony] ... just as it was a decision on [his] part not to go into the fact that [Wright's] statement to the police initially was different than her testimony at trial."
 
 
 12
 Brauer justified that decision as follows: He noted that he and his co-counsel had "wrestled back and forth" with the decision. He explained, however, that Wright's testimony had had a "phenomenal" impact on the jurors, bringing several of them to tears.[1] After seeing this effect, Brauer concluded that if he cross-examined Wright regarding what could be perceived to be "little picky things," he would only convince the jury of Gallo's guilt.
 
 
 13
 Brauer's testimony indicates that several other factors also informed his decision. First, Brauer testified that he thought Wright's earlier statements might not be regarded as inconsistent--that the jury might believe that Gallo also had sodomized Wright on her hospital bed. Second, he expressed concern that, if he questioned Wright about the police report, evidence that Gallo broke Wright's arm at the hospital might come to the jury's attention, further prejudicing the jurors against Gallo. Finally, Brauer pointed out that Gallo had utterly refused to cooperate in the preparation of his own defense. As a consequence, Brauer apparently did not know whether Gallo would take the stand and, if he did, whether he would claim that the sex acts at issue did not occur or that they were consensual. Concerned that Gallo's case would be damaged if there appeared to be inconsistent defenses, Brauer chose not to present Wright's prior statements.
 
 
 14
 In view of this record evidence, it appears clear that Brauer's decision not to raise the inconsistent statements was a strategic choice and that it was informed by a thorough examination of the relevant facts. Thus, the decision is entitled to an especially strong presumption of reasonableness. See Strickland, 466 U.S. at 690.
 
 
 15
 2. The omission of the evidence at issue was reasonable under the circumstances.
 
 
 16
 Gallo argues that Brauer's failure to introduce evidence of Wright's "six prior inconsistent statements" nevertheless was unreasonable because that evidence constituted "the only available defense to the three sex offense charges." Gallo calls attention to Brauer's admission that, when he decided not to cross-examine Wright regarding the inconsistent statements, he recognized that "she would be believed on [the sexual offense] charges." Based on this evidence, Gallo argues that no defense attorney reasonably could forego a potentially damaging defense in favor of no defense at all.
 
 
 17
 In support of his argument, Gallo cites United States v. Span, in which we stated,
 
 
 18
 We have a hard time seeing what kind of strategy, save an ineffective one, would lead a lawyer to deliberately omit his client's only defense, a defense that had a strong likelihood of success, and a defense that he specifically stated he had every intention of presenting.
 
 
 19
 75 F.3d at 1390. Gallo also points to a number of cases in which this Court and other circuits have held that a defense attorney's failure to introduce evidence of prior inconsistent statements constituted ineffective assistance of counsel. What distinguishes this case from those cited by Gallo, however, is the inconclusiveness of Wright's pretrial testimony.
 
 
 20
 In his brief, Gallo presents a number of cases in which appellate courts reversed convictions due to defense counsel's "failure to impeach an important or the primary prosecution witness with material prior inconsistent statements." All of these cases, however, involved the omission of dramatically inconsistent prior statements. See Tucker, 716 F.2d at 586 (involving earlier inconsistent testimony that was clearly perjured); Driscoll v. Delo, 71 F.3d 701, 710 (8th Cir.1995) (involving witness who testified at trial that he had witnessed defendant stab prison guard, but who previously told investigators that he merely had heard that defendant "or someone" stabbed prison guard); Moffet v. Kolb, 930 F.2d 1156, 1160-61 (7th Cir.1991) (involving prior statement by witness that person other than defendant had committed murder); Nixon v. Newsome, 888 F.2d 112, 113-14 (11th Cir.1989) (involving witness who testified that defendant had killed her husband after testifying at another trial that another man had killed her husband); Smith v. Wainwright, 799 F.2d 1442, 1443-44 (11th Cir.1986) (involving witness who testified at trial that defendant was principal actor in murder but who had earlier told investigators that he had been principal actor). Thus, in these cases, the witnesses' prior inconsistent statements raised significant doubts regarding the truth of their trial testimony.
 
 
 21
 The facts of this case present a much less conclusive picture. Wright's preliminary hearing testimony that she never claimed to have been sodomized in her hospital bed does contradict the February 1983 police report. However, none of Wright's prior statements are clearly inconsistent with her trial testimony. A witness is not necessarily giving inconsistent testimony when she gradually develops and explains the details of her story. Moreover, a victim of violent sexual crimes can hardly be expected to describe every detail of her experience on every occasion that she discusses it. Accordingly, Wright's failure to mention the oral copulation charge every time she discussed the acts of forced sodomy does not necessarily cast doubt on her trial testimony. Indeed, in light of the substantial record evidence that Wright suffered some memory loss as a result of her head injuries, the evolving nature of Wright's testimony is easily explained.
 
 
 22
 It is not difficult, moreover, to appreciate why Gallo's counsel sought to avoid eliciting such an explanation. As the state court of appeal reasoned,
 
 
 23
 Put as laconically as possible, there is persuasive evidence that Valerie [Wright] suffered repeated head injuries which affected not only her vision and equilibrium but also her memory. The gentlest of cross-examination might well have elicited nothing more than a detailed reiteration of these facts, with the attendant inference that once the beatings stopped Valerie was able gradually to regain her memory. Valerie might well have been expected, in addition, to respond that at the time of the sexual attacks she had instinctively focused primarily on the concurrent beating which she reasonably regarded as immediately life-threatening. In short Brauer might rationally have concluded that any form of cross-examination would have entailed an unacceptable degree of risk to Gallo's case.
 
 
 24
 Were Wright's prior statements clearly inconsistent with her trial testimony, it may well have been unreasonable for Brauer to forego cross-examining Wright regarding them. The relative weakness of the evidence suggests, however, that Brauer acted reasonably in choosing not to risk prejudicing the jury against his client.
 
 
 25
 Accordingly, we find that Brauer's conduct was within "the range of legitimate decisions regarding how best to represent a criminal defendant," Strickland, 466 U.S. at 689. Because we find Brauer's conduct to have been reasonable, we do not reach the question of whether that conduct prejudiced Gallo's defense.
 
 II. Gallo's Due Process Claim
 
 26
 Pursuant to the Fourteenth Amendment's guarantee of due process, a prosecutor may not suppress "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962). A prosecutor's suppression of exculpatory evidence rises to the level of a constitutional violation, however, only if there is a reasonable probability that disclosure of the evidence would have altered the result of the proceeding. See United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). If there is only a "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," there is no due process violation. United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
 
 
 27
 In the present case, the district court determined that the prosecution's failure to disclose a portion of a recorded interview with Wright was not a constitutional error. The court found the withheld evidence to have been largely cumulative: Wright admitted on the tape that her memory was poor, and that fact was readily apparent from other evidence presented at trial.
 
 
 28
 On appeal, Gallo contends that the district court misperceived the value of the evidence. He points out that Wright also admitted on tape that a letter to her brother written in February 1983 contained "things that I remembered. A lot more than I do now in it ." He argues that the tape recording indicates that Wright's memory was at its best in February 1983, which is when her first police report was filed. He also cites a sworn declaration by Gallo's trial counsel, Brauer, in which Brauer stated that he likely would have introduced the other evidence of Wright's prior inconsistent statements had he been aware of the tape. Gallo argues that the suppression of the tape-recording consequently deprived him of his only defense to the sexual offense charges.
 
 
 29
 Gallo's arguments, however, do not suffice to demonstrate a reasonable probability that disclosure of the tape would have changed the outcome of the trial. First, while Wright admits on the tape that her letter to her brother contained "things that I remembered. A lot more than I do now in it," the letter to which she refers discusses only her first beating. It makes no reference to the sexual offenses. It also contains details regarding what specifically Gallo said to Wright and how exactly he abused her--details that very normally would tend to fade over time. The letter consequently does little to prove that Wright's memory of the sexual offenses had diminished over time to a greater extent than would be expected.
 
 
 30
 Second, the possibility that disclosure of the tape might have encouraged Brauer to present the evidence of Wright's prior inconsistent statements does little to bolster Gallo's argument. As discussed above, that impeachment strategy itself had little chance of success.
 
 
 31
 Accordingly, we reject Gallo's due process argument.
 
 CONCLUSION
 
 32
 For the foregoing reasons, the district court's denial of Gallo's petition for habeas corpus is AFFIRMED.
 
 
 
 **
 The Honorable Ruggero J. Aldisert, Senior Circuit Judge for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Brauer's testimony regarding the jurors' reactions is corroborated by the trial record. During one of the recesses in Wright's testimony, Brauer made the following request of the court:
 Your Honor, I noticed yesterday some pretty strong facial reactions from certain members of the jury, and I would--I don't have any authority to cite, but I would ask your Honor ask a general question of the whole panel ... has any member of the jury formed such a strong opinion about the evidence presented so far that they cannot believe they could do their duty as a fair juror in this case.