Craig F. WEIGHALL, Petitioner–Appellant,

v.

Diane MIDDLE, Respondent–Appellee.

No. 99–35657.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 1, 2000.

Filed June 1, 2000.

---

Thomas J. Hester, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Jennifer S. Lloyd, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: LAY,[1] TASHIMA, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

Craig Weighall appeals the district court's denial of his 28 U.S.C. § 2254 petition. Weighall was convicted in Oregon state court of first degree assault for stabbing another man in a bar fight. At trial, he pursued a theory of self-defense and the jury was instructed on the permissible use of deadly force in self-defense. Weighall now maintains that his trial counsel's failure to request an additional instruction to further clarify the defense constituted ineffective assistance of counsel. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm the district court's denial of Weighall's petition.

## BACKGROUND

Weighall was convicted of first degree assault for the stabbing of James McPherson. The charges arose out of a fight at the River View Lounge in Columbia County, Oregon. McPherson, who appeared to be intoxicated, approached Weighall in the

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

bar and supposedly mistook him for another individual, "Cocaine Dave," whom McPherson thought had previously insulted his wife. According to McPherson, Weighall immediately stabbed him. Other witnesses agreed that Weighall initiated the physical contact, after which McPherson began to fight back. Weighall, who as the result of a severe accident has only one leg and various other serious physical disabilities, testified that McPherson began the physical altercation. One witness testified that McPherson was behaving in a threatening manner, but he did not see the fight start. After the fight, Weighall fled the bar. He later told police that someone else committed the stabbing.

At trial, Weighall advanced a theory of self-defense, claiming that he was especially vulnerable to attack due to his injuries. The court instructed the jury generally that reasonable physical force is justified for self-defense. Based on Oregon law, the court further instructed that the use of deadly force in self-defense is permitted only where the defendant reasonably believed that the other person was: (1) committing or attempting to commit a felony involving the use or threatened use of physical force against a person; or (2) committing or attempting to commit a burglary in a dwelling; or (3) using or about to use unlawful deadly physical force against a person. *See* Or.Rev.Stat. § 161.219. The court did not define "felony" with regard to the first circumstance.

Weighall maintains that the facts of his case fall within the first circumstance, namely that he had a reasonable belief that McPherson was going to commit a felonious assault on him. Weighall further argues that his counsel violated his Sixth Amendment right to effective assistance of counsel by failing to request an instruction on the elements of second degree[2] and third degree[3] assault-the felonies that Weighall feared. After exhausting his state post-conviction remedies, Weighall filed a federal habeas petition. The magistrate judge reviewed both the trial transcript and Weighall's post-conviction testimony and concluded that Weighall failed to demonstrate that his trial counsel was ineffective or, presuming counsel was ineffective, that he was prejudiced by the error. The district court adopted the magistrate judge's findings and recommendation and denied the petition.

## DISCUSSION

### 1. Application of AEDPA

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Weighall must demonstrate that the state court adjudication of the merits of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The parties agree that *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the relevant "clearly established federal law." The district court, following this court's statement in *Moore v. Calderon*, 108 F.3d 261, 265 n. 3 (9th Cir.1997) ("contrary to" applies to questions of law and "unreasonable application of" applies to mixed questions of law and fact), determined that because ineffective assistance of counsel is a mixed question of law and

2. "A person commits the crime of assault in the second degree if the person: (a) [i]ntentionally or knowingly causes serious physical injury to another; or (b) [i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or (c) [r]ecklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life." Or.Rev.Stat. § 163.175(1).

3. "A person commits the crime of assault in the third degree if the person ... (b) [r]ecklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life ... [or] (e) [w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]" Or.Rev. Stat. § 163.165(1).

fact, Weighall's claim should be evaluated under the "unreasonable application" prong. The court then explained that although conclusions of law are reviewed de novo, mixed questions of law and fact are reviewed under a more deferential standard.

The question whether there exists a dichotomy between the "contrary to" prong and the "unreasonable application of" prong has been unresolved in this circuit. *See Davis v. Kramer,* 167 F.3d 494, 500 & n. 7 (9th Cir.1999) (explaining that *Moore* was dicta and that there is no rigid distinction between the two prongs), *vacated on other grounds,* — U.S. —, 120 S.Ct. 1001, — L.Ed.2d — (2000); *Baker v. Blaine,* 205 F.3d 1138, 1140 n. 2 (9th Cir. 2000) (following *Moore,* disavowing *Davis,* and leaving for another day the resolution of the issue); *id.* at 1143 (Canby, J., dissenting) (*"Davis* now stands as the law of this circuit; I therefore consider myself bound by its conclusion that the *Moore* reference was dictum and no firm dichotomy is to be applied in reviewing state decisions under AEDPA."); *Wade v. Terhune,* 202 F.3d 1190, 1195 (9th Cir.2000) ("Although we have not yet defined the precise reach of these overlapping standards, it is clear that both are met when the state court has failed to follow the law as set forth by the Supreme Court."); *Furman v. Wood,* 190 F.3d 1002, 1004 (9th Cir.1999) (following *Davis* ); *Wilson v. Henry,* 185 F.3d 986, 988 (9th Cir.1999) (leaving open question of how to resolve issue).

The Supreme Court largely resolved the issue in *Williams v. Taylor,* — U.S. —, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and held that the two clauses are separate and generally apply to different circumstances.[4] Writing for a five Justice majority, Justice O'Connor explained that

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523.[5] After providing several examples of situations in which the "contrary to" prong would apply, the Court stated that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 1520. The Court then cited a state court's *Strickland* analysis as an example of a situation that generally would not fall within the "contrary to" clause. *See id.; see also id.* at 1525 (Rehnquist, C.J., concurring in part and dissenting in part) ("Generally, in an ineffective-assistance-of-counsel case where the state court applies *Strickland,* federal habeas courts can pro-

---

**4.** To the extent that a case may fall under both prongs of the statute, *see Van Tran v. Lindsey,* 212 F.3d 1143, 1149–50 (9th Cir. 2000), we note that this case does not present such a situation. We further recognize that the distinction between the two prongs does not turn on classification of the question as one of law or as a mixed question of law and fact. *See id.* at 1149–50.

**5.** Justice Stevens, joined by three other Justices, rejected the dichotomy approach. Notably, the area of common ground with the majority that Justice Stevens identifies seems to squarely encompass Weighall's case: "We all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. Our difference is as to the cases in which, at first-blush, a state-court judgment seems entirely reasonable, but thorough analysis by a federal court produces a firm conviction that that judgment is infected by constitutional error." 120 S.Ct. at 1511.

ceed directly to 'unreasonable application' review."). In accord with *Williams*, we hold that Weighall's *Strickland* challenge should be analyzed under the "unreasonable application" prong of § 2254(d) and that the district court did not err in this regard.[6]

■ Weighall further asserts that even if his claim were properly reviewed under the "unreasonable application of" prong, the district court applied the wrong standard of review, namely that "[a]n unreasonable application of federal law is one that is so clearly incorrect that it would not be debatable among reasonable jurists." We agree that the district court applied the wrong standard but conclude that it does not change the result.

In *Williams*, the Supreme Court rejected the "reasonable jurists" test.[7] "The 'all reasonable jurists' standard would tend to mislead federal habeas courts by focusing their attention on a subjective inquiry rather than on an objective one." 120 S.Ct. at 1521. The Court explained that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* The Court did not provide much additional explanation but did make clear that "an unreasonable application of federal law is different from an incorrect application of federal law ... a federal habeas court may not issue the writ simply because that court concludes in

its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522.

Following *Williams*, we recently held that in order for a state court's application of federal law to be unreasonable, it must have been clearly erroneous. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152–54 (9th Cir. 2000). Even though the district court used the incorrect test for determining whether the state post-conviction court unreasonably applied *Strickland*,[8] we affirm the district court's decision because, as discussed below, the state court did not unreasonably apply clearly established federal law.

## 2. Ineffective Assistance of Counsel

■ To prevail on a claim of ineffective assistance of counsel, Weighall must show that his trial counsel's performance fell outside a wide range of reasonableness and that he was prejudiced by that performance. *See Wilson*, 185 F.3d at 988. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.... A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 691, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

**6.** We recognize that there may be situations involving *Strickland* claims that do not fit comfortably within the "unreasonable application" prong. *See Williams*, 120 S.Ct. at 1525 (Rehnquist, C.J., concurring in part and dissenting in part). We do not address what such a situation might look like, but note only that Weighall's petition does not present such a case.

**7.** Our decision in *Davis*, which was issued subsequent to the district court's ruling, is consistent with *Williams*. *See Davis*, 167 F.3d at 500 ("[A] state court decision amounts to an unreasonable application of clearly established federal law where the state court fails to apply a legal principle, enunciated in

one or more Supreme Court decisions, to a situation where such application is required by the force and logic of the Court's decision.").

**8.** At oral argument, Weighall's counsel maintained that because the state post-conviction court failed to provide the basis for its decision, under our ruling in *Delgado v. Lewis*, 181 F.3d 1087 (9th Cir.1999), the federal habeas court was required to perform an independent review of the record. Although we could deem this argument waived because Weighall did not raise it in his brief, we note that our independent review of the record supports the state court's finding that there was no *Strickland* error.

Trial counsel's failure to request the additional instruction was not unreasonable. The jury was presented with Weighall's theory of self-defense and the court gave a general use of deadly force instruction that provided the jury with three circumstances in which deadly force would be permitted. Weighall maintained that only one of the circumstances was applicable here-fear that the victim was committing or attempting to commit a felony involving the use or threatened imminent use of physical force. In his closing argument counsel told the jury that the applicable deadly force situation related only to the first circumstance, and then stated that "I think this case boils down to common sense and I think you can evaluate the case, strip the common sense without the use of all these technical rules. I think common sense tells us what we can do for self-defense." Trial counsel also emphasized several scenarios that would constitute felonious assaults. The evidence, the general instruction, and counsel's closing argument, including his examples and his emphasis on common sense, put the issue squarely before the jury. *See Willis v. United States*, 87 F.3d 1004, 1008 (8th Cir.1996) (holding that failure to proffer specific instruction on good faith not ineffective assistance and pointing out that counsel asserted good faith defense repeatedly in closing argument); *United States v. Haddock*, 12 F.3d 950, 959 (10th Cir.1993) (failure to request good faith in-struction not ineffective assistance of counsel where defense and evidence were clearly before jury even without instruction); *see generally United States v. Bosch*, 914 F.2d 1239, 1248 (9th Cir.1990) (noting significance of counsel argument when combined with general instruction).

The case upon which Weighall places primary reliance-*United States v. Span*, 75 F.3d 1383 (9th Cir.1996)-does not compel a contrary result. Unlike the situation here, trial counsel's mishandling of the jury instructions in that case completely deprived the defendants of a theory of defense.[9] Nor is *Capps v. Sullivan*, 921 F.2d 260 (10th Cir.1990), another case cited by Weighall, persuasive. There, counsel allowed the defendant to take the stand and admit the elements of the crime, but then failed to request an entrapment defense even though it was supported by the evidence. *See id.* at 262. *Span* and *Capps* were exceptional cases,[10] and counsel's performance here is in no way comparable. The state court's application of *Strickland* was not "clearly erroneous," *Van Tran*, 212 F.3d 1143, 1152–54, and cannot be said to be unreasonable.

AFFIRMED.

---

9. In *Span* we stated:

> It thus is clear that counsel inadvertently lost the Spans' their excessive force defense by failing to request an instruction that the Spans' self-defense in the face of an excessive use of force by the marshals is an affirmative defense. Moreover, they failed to request an instruction explaining an element of the offense, that excessive use of force in the pursuit of official duty is not considered a good faith performance of official duties.... And counsel failed to establish a foundation for an excessive force defense, which would at least have allowed the Spans to obtain reversal on appeal. In addition, counsel failed to object to the trial court's [*U.S. v.*] *Feola[*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)] instruction, which had the effect of negating any excessive use of force defense that the jury could have implied from the elements of the statute because it required the jury to find that the Spans' did not know [the marshals] were federal officers before allowing Spans any right of self-defense.

> 75 F.3d at 1389.

10. *See Span*, 75 F.3d at 1391 ("While we recognize that not every instance of counsel's ineffective handling of the jury instructions requires vacation of the underlying conviction, the egregiousness of the facts and the magnitude of trial counsel's incompetence in this case require that we do so.").