**Marcus BOVARIE, Petitioner,**

v.

**G.J. GIURBINO, Warden, Respondent.**

**No. CV 05–538–PA (PLA).**

United States District Court,
C.D. California,
Western Division.

April 3, 2008.

Marcus Bovarie, Imperial, CA, pro se.

Timothy M. Weiner, CAAG–Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER ADOPTING MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

PERCY ANDERSON, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's final report and recommendation, and the objections to the report and recommendation that have been filed herein. The Court agrees with the recommendations of the magistrate judge.

ACCORDINGLY, IT IS ORDERED:

1. The final report and recommendation is adopted.

2. Judgment shall be entered consistent with this order.

3. The clerk shall serve this order and the judgment on all counsel or parties of record.

## FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PAUL L. ABRAMS, United States Magistrate Judge.

This Final Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons discussed below, the Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be dismissed with prejudice.

## I

### PROCEDURAL HISTORY

On September 6, 2001, following a court trial in the Ventura County Superior Court, petitioner was convicted of seven counts of second degree robbery (California Penal Code § 211). The court also found true the allegations that petitioner personally used a firearm within the meaning of California Penal Code § 12022.5(a)(1) and § 12022.53(b), and petitioner admitted he had served prior prison terms. Petitioner received a sentence of twenty-two years, four months in state prison. (Reporter's Transcript ("RT") 384, 444–48, 450, 457–61; Clerk's Transcript ("CT") 159–66, 172–82).

On direct appeal, the California Court of Appeal affirmed the judgment and sentence. (Answer, Exhibits ("Exhs.") B, E). Petitioner filed a petition for review in the California Supreme Court, which was denied on January 29, 2003. (Answer, Exhs.F, G).

Petitioner subsequently filed a habeas petition in the Ventura County Superior Court, which was denied on September 16, 2003. (Answer, Exhs.H, I, J, K, L, M). Petitioner filed a second habeas petition in the Ventura County Superior Court, which

was denied on November 26, 2003. (Answer, Exhs.N, O). Petitioner filed a habeas petition in the California Court of Appeal, which was denied on January 15, 2004. (Answer, Exhs.P, Q). Petitioner then filed a habeas petition in the California Supreme Court, which was denied on December 1, 2004. (Answer, Exhs.R, S).

On January 21, 2005, petitioner filed the instant Petition. On April 6, 2005, respondent filed an Answer and Return. On May 10, 2005, petitioner filed a Traverse.

The matter is deemed submitted and is ready for a decision.

## II

### STATEMENT OF FACTS

The Court adopts the below factual summary as set forth by the California Court of Appeal in its opinion affirming petitioner's judgment of conviction. To the extent that an evaluation of petitioner's individual claims depends on a further examination of the trial record, the Court herein has made an independent evaluation of the record specific to those claims.

#### A. Prosecution Case

1. The Ranch House Restaurant Robbery

At about 10:15 p.m., on December 2, 1999, Brian Houle, an employee of the Ranch House Restaurant in Ojai, was leaving the restaurant after closing when he was confronted outside by two men wearing black ski masks and dark long-sleeved clothing. One of the assailants, whom Houle described as a five-foot-nine-inch-tall white man with blue eyes, was holding a black shotgun with a brown handle. [Petitioner] has blue eyes and is five feet eight inches tall. Houle testified that the other assailant was taller and larger and spoke with an Hispanic accent.

Houle was directed back into the restaurant, where the robbers confronted employee Mike Denney. As directed by the assailants, Houle and Denney laid on the ground and put their hands behind their backs. Their hands were then tied with black plastic "zip ties," and their feet were bound with duct tape that the assailants found in the restaurant. One of the assailants told Houle and Denney that they would "get a bullet in the butt" if they looked at the assailants or did not keep quiet. The assailants subsequently left with $200 from the cash register, a $400 bottle of champagne, and a stun gun that was kept in a drawer. They also took Denney's watch and $150 from his wallet.

2. The Outback Steakhouse Robbery

At about midnight on December 5, 1999, Marilyn Westerman was leaving her job at the Outback Steakhouse in Oxnard when she was forced back into the restaurant at gunpoint. Another employee, Matt Roe, was brought back into the restaurant from the parking lot by a second assailant. Both assailants were wearing black ski masks and dark clothing. Westerman testified that the first assailant was about five feet eight inches tall and had light-colored eyes, while the second assailant was much taller and heavier and spoke with an Hispanic accent. Roe testified that the first assailant was about five feet ten inches tall and that the second assailant had a heavier build and an Hispanic accent. Westerman described the first assailant's weapon as a two-foot-long, dark-colored gun; Roe described it as a sawed-off shotgun with a three-inch-long barrel. Westerman and Roe both testified that the second assailant was holding a small silver handgun and had a police scanner.

The assailants used black zip ties to bind Westerman's and Roe's hands.

One of the assailants told them that "[i]f you do what we tell you, we won't hurt you." When the first assailant entered the restaurant, he approached another employee, Katherine Iliakidis, and asked her how many employees were in the office. The robbers confronted the restaurant manager, Robert Davis, and employee Felicia Collins in the office counting money. The assailants told Davis and Collins to lie on the floor with their hands behind their backs, then they bound their hands with black zip ties.

When Davis heard the first assailant say "oopsy-daisy" after he accidentally stepped on Collins, Davis "knew definitely" that [petitioner] was the assailant. Davis personally knew [petitioner] because he used to work for him as a server at the restaurant, and he recognized his distinctive blue eyes, his voice, and his unusual use of the phrase "oopsy-daisy." Iliakidis also testified that the assailant Davis identified as [petitioner] had "very pretty clear blue" eyes.

While in the office, the assailants opened the drawer where the servers kept their tips. They ultimately took about $4,000 that was on the desk, $400 from the bar drawer, and $1,250 from the petty cash box. All five of the employees were put in the men's bathroom. After the assailants left, Davis noticed that bottles of alcohol appeared to be missing.

After the police arrived, Iliakidis found a plastic bag labeled "zip ties" on the floor outside the office and turned it over to the police. The defense stipulated at trial that a palm print and fingerprints lifted from the bag perfectly matched [petitioner's]. Davis told the police he was "100 percent" certain that [petitioner] was one of the robbers, and he gave them [petitioner's] employee

file. Davis subsequently identified [petitioner] in court as one of the assailants.

### 3. The Search of Robert Perce's Car

On December 8, 1999, police searched a car belonging to Robert Perce and found a black ski mask, hooded sweatshirt and gloves, a stun gun, three $100 bills, and a roll of quarters. The items were found in the trunk next to [petitioner's] name tag and training materials for his job at the Robinsons–May department store. The manager of the Ranch House identified the stun gun at trial as the one taken from the restaurant on December 2.

### B. Defense Case

Four of [petitioner's] friends testified that they had seen him at Nicholby's nightclub in downtown Ventura around or after midnight on the weekend of the Outback Steakhouse robbery. [Petitioner] also testified on his own behalf. He explained that items belonging to him were found in Perce's trunk because he lived half of the time at Perce's house in Oxnard and the other half at his mother's house in Ojai. [Petitioner] testified that Perce "looks between Mexican and Samoan" and is over six feet tall and weighs about 250 pounds. [Petitioner] also testified that Perce owned several guns, including a sawed-off shotgun.

[Petitioner] worked at the Outback Steakhouse near Perce's house during the summer of 1999, and he admitted that he was familiar with the restaurant's closing procedures and knew where the servers kept their tips. According to [petitioner], he often went to Perce's house after work and Perce would ask him how much money the restaurant had made. When confronted with the print evidence, [petitioner] explained that he had used zip ties at Perce's house in October 1999 to fix the front bumper of his car and hold wires

together on a car stereo. He denied that he had ever used the term "oopsy-daisy."

[Petitioner] claimed that he was at a girlfriend's house on the night of the Ranch House robbery. On the night of the Outback Steakhouse robbery, he allegedly "hung out" at Perce's house with Perce and another friend, Daniel Zapata, until about 11:30 p.m. Zapata is six feet tall, weighs around 200 pounds, and has an Hispanic accent. After [petitioner] left Perce's house, he went to Nicholby's. [Petitioner] and his girlfriend returned to Perce's house at about 1:00 a.m., but they left after Perce told [petitioner], "you don't want to be here." According to [petitioner], he and his girlfriend then parked at Marina Park for about an hour and drank a beer, after which his girlfriend drove him to another friend's house where he spent the night.

(Answer, Exh. E at 101–05).

### III

### *PETITIONER'S CONTENTIONS*

1. The prosecution failed to disclose material exculpatory DNA evidence. (Petition at 5).

2. Petitioner's appellate counsel rendered ineffective assistance for failing to raise the issue of the DNA evidence on appeal. (Petition at 5).

3. The Ventura County Superior Court's denial of petitioner's habeas petition "constitutes a miscarriage of justice." (Petition at 6).

4. The superior court's sentencing procedure was illegal because: (1) the trial court based its imposition of the upper term on its own finding of aggravating circumstances in violation of petitioner's right to a jury trial; (2) insufficient evidence supported the "personal use of a

firearm" finding; and (3) in sentencing petitioner, the trial court violated the "dual use doctrine" under California Penal Code § 1170(b).[1]  (Petition at 6).

1. On February 28, 2007, petitioner filed a motion to amend, in which he stated that due to "new law" announced in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), he needed to amend his Petition accordingly.  The Court advised petitioner that if he sought to exhaust in state court a new claim based on *Cunningham*, he should move for an order deleting his unexhausted claims and staying the Petition and holding it in abeyance while he pursued state remedies.  Subsequently, on April 9, 2007, petitioner submitted a second motion to amend (hereinafter referred to as the "Second Motion") in which he explained that he essentially wanted to "expand" on the issues already raised in the Petition and that were already exhausted.  In particular, petitioner stated that with respect to Ground Four, he wanted to expand on the arguments that (1) the firearm enhancements were imposed unlawfully because the trial court failed to make a finding of "personal use of a firearm", (2) insufficient evidence supported the "personal use of a firearm" determination, and (3) petitioner's waiver of a jury trial on the firearm enhancements was not valid.  (*See* Second Motion at 3–10).  Petitioner further stated that he wanted to elaborate on Ground Two by including claims that his appellate counsel was ineffective for failing to raise the following arguments on appeal: (1) the trial court failed to make a finding of "personal use of a firearm", (2) insufficient evidence supported the "personal use of a firearm" determination, and (3) the jury trial waiver was invalid.  (*See* Second Motion at 11).

The Court finds that petitioner's claim in the Second Motion concerning the sufficiency of the evidence in support of the "personal use of a firearm" determination is identical to the claim raised in Ground Four of the Petition.  Accordingly, the Court will consider petitioner's additional contentions concerning the insufficient evidence claim in its habeas analysis.

The Court notes, however, that contrary to petitioner's representation that the claims described in the Second Motion were previously raised in the Petition, it appears that petitioner does in fact attempt to raise *new* claims, such as: the jury trial waiver was invalid, the trial court failed to make the "personal use of a firearm" finding, and appellate counsel was ineffective for failing to raise on appeal the arguments concerning the "personal use of a firearm" allegations and the jury trial waiver.

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") allows a one-year statute of limitations for filing a federal habeas petition.  28 U.S.C. § 2244(d)(1).  Considering that the instant Petition was filed nearly two years ago, on January 21, 2005, the one-year limitations period for petitioner had lapsed well before the filing of petitioner's Second Motion.  At this time, any new claim is time-barred, and therefore can be added to the instant Petition by way of amendment only if it "relates back" to the Petition.  Fed.R.Civ.P. 15(c)(2).  Under Federal Rule of Civil Procedure 15(c)(2), an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The U.S. Supreme Court has held that, in the habeas context, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  *Mayle v. Felix*, 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

With respect to petitioner's newly asserted claims, the Court finds that the following relate back to the instant Petition: (1) the trial court failed to make the "personal use of a firearm" finding, and (2) appellate counsel rendered ineffective assistance for failing to raise on appeal the arguments that insufficient evidence supported the "personal use" finding and that the trial court failed to make a finding of "personal use."  Specifically, the Court concludes that these new claims generally relate back to petitioner's contentions in the Petition that the "personal use" finding was not supported by sufficient evidence.  Accordingly, the Court will consider the merits of these new claims in the Report and Recommendation, as it appears they have been exhausted in state court.  (*See* Answer, Exhs. F, N, R).  The remaining new claims relate to petitioner's jury trial waiver—an issue that was not raised in the Petition and does not relate to the core operative facts asserted therein.  Accordingly, for the new claims concerning the validity of petitioner's jury trial waiver and appellate counsel's alleged failure to raise the issue of the jury trial waiver on

## IV

### *STANDARD OF REVIEW*

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Pub.L. No. 104–132, 110 Stat. 1214 (1996). Therefore, the Court applies the AEDPA in reviewing the Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams*, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495; *see Weighall v. Middle*, 215 F.3d 1058, 1061–62 (9th Cir.2000) (discussing *Williams*). A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495; *Weighall*, 215 F.3d at 1062. The Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411, 120 S.Ct. 1495; *accord: Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n. 7, 117 S.Ct. 2059, and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 360,

appeal, the Court finds that relation back is not in order. Thus, to the extent petitioner seeks to have the Petition amended to add the jury trial waiver claims, his request is **denied**.

The Court further observes that in conjunction with his motion to amend, petitioner also submitted a motion requesting a stay and abeyance. In the motion for a stay, petitioner states: "At this time I cannot identify the actual issues to exhaust even though I know the original problem. Ineffective assistance of appellate coun[s]el? Ineffective assistance of trial coun[s]el? Prosecutorial misconduct? Or another issue entirely? There are many questions I must answer that my petition could turn on, and for that I need some time." (Motion at 12–13). Because petitioner is admittedly uncertain of what claims he intended to pursue if the Court issued a stay, the Court finds that a stay is not warranted. Accordingly, petitioner's request for a stay is **denied**.

154 L.Ed.2d 279 (2002) (per curiam). A federal court may not "substitut[e] its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)." *Id.; Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only "merely erroneous").

The only definitive source of clearly established federal law under the AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law (*Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 1999)), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495; *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Furthermore, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

The United States Supreme Court has held that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). With respect to the grounds for relief raised in the instant Petition, the Court finds that petitioner fairly presented the claims set forth in Ground Four in his petition for review and habeas petition filed in the California Supreme Court. (*See* Answer, Exhs. F, R). Because the California Supreme Court did not issue a reasoned denial, the Court must perform an independent review of the record to determine whether the state court erred in its application of controlling federal law in dismissing these claims. *See Delgado v. Lewis,* 223 F.3d 976, 981–82 (9th Cir.2000).

With respect to Grounds One, Two, and Three, it appears that petitioner has not exhausted these claims in state court. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). For a court to address an unexhausted claim on the merits, however, it must be "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart,* 406 F.3d 614, 623–24 (9th Cir. 2005). With respect to Grounds One, Two, and Three, because it is clear that petitioner fails to raise any colorable federal claim, the Court exercises its discretion to address and reject the claims on the merits. Accordingly, out of an abundance of caution and to ensure that no colorable federal claims have been raised, the Court reviews the unexhausted claims *de novo,* the highest possible standard of review.

## V

## *DISCUSSION*

## GROUND ONE: THE PROSECUTION FAILED TO DISCLOSE MATERIAL EXCULPATORY DNA EVIDENCE.

In Ground One, petitioner contends that the prosecution failed to disclose material exculpatory DNA evidence. (Petition at 5).

The Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that due process requires a prosecutor to produce to a criminal defendant any evidence, material either to guilt or punishment, that is favorable to the accused. *Brady,* 373 U.S. at 87–88, 83

S.Ct. 1194. This obligation extends to impeachment evidence and to evidence that was not requested by the defense. *United States v. Bagley*, 473 U.S. 667, 676, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also United States v. Agurs*, 427 U.S. 97, 107–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir.1995) ("A prosecutor's duty to reveal such evidence does not depend on a request by the defense.").

To prevail on a *Brady* claim, the defendant must show that "(1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment." *United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001) (citing *Paradis v. Arave*, 130 F.3d 385, 392 (9th Cir.1997)). For purposes of determining prejudice, the withheld evidence must be analyzed "in the context of the entire record." *Agurs*, 427 U.S. at 112, 96 S.Ct. 2392. Evidence is prejudicial, or material, under *Brady* if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*United States v. Alvarez*, 86 F.3d 901, 904 (9th Cir.1996) (citing *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375).

■ The record shows that DNA testing was performed on the ski mask the police recovered in the search of Robert Perce's vehicle, and that the test results concluded petitioner's DNA did not match the DNA found on the mask. Petitioner's allegations that the prosecutor failed to provide the defense with the test results, however, are refuted by the record. Contrary to petitioner's claims, the record reflects that the evidence at issue was disclosed to the defense prior to trial since during the trial the parties presented a stipulation regarding the DNA test results that read as follows: "[T]he black ski mask seized in the stop and search of [Perce's] car ... yielded a testable sample and a PCR DNA test was conducted by the Ventura Sheriff's Crime Lab and [petitioner] was excluded by that test." The trial court stated on the record that it accepted the stipulation. (RT 382–83). Moreover, during closing argument, petitioner's trial counsel remarked that the DNA testing on the ski mask "shows ... it's definitely not [petitioner]." (RT 444). In light of this record, petitioner's claim that the prosecution withheld exculpatory DNA evidence is baseless.[2]

**2.** To the extent petitioner asserts that the DNA evidence should have been introduced through testimony or other evidence, as opposed to the stipulation, his contention is unavailing. Because there was no dispute between the parties that the DNA test results showed it was not petitioner's DNA on the ski mask, the parties stipulated to that fact accordingly. In California, "where an offer to stipulate to certain facts is made, the facts covered by the proposed stipulation are removed from dispute; accordingly, testimony elicited to prove such facts is irrelevant and inadmissible." *People v. Griggs*, 110 Cal. App.4th 1137, 1141, 2 Cal.Rptr.3d 380 (2003). Thus, given the stipulation, any additional tes-

timony or evidence at petitioner's trial regarding the DNA test results was not appropriate.

It also appears that petitioner contends the DNA evidence, by itself, was exonerating, and thus more emphasis should have been placed on the importance of the DNA test results. The Court disagrees. While petitioner's DNA was not found on the ski mask, that evidence alone does not negate the substantial evidence pointing to his guilt, namely the testimony of Robert Davis (the manager of the Outback Steakhouse) who used to work with petitioner and recognized him as one of the assailants (RT 182–87, 202–06), the testimony of the other robbery victims who described one of the assailants as having blue eyes like petitioner, the fact that petitioner's palm print

Pursuant to this *de novo* review, the Court finds that petitioner's claim fails. *Cassett*, 406 F.3d at 623–24. Habeas relief is denied for Ground One.

## GROUND TWO: PETITIONER'S APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE.

In Ground Two, petitioner contends that his appellate counsel was ineffective for failing to raise the issue of the DNA evidence in the direct appeal. (Traverse at 10). In support of this claim, petitioner references a letter written to him by his appellate counsel concerning issues to raise on appeal. With respect to the DNA evidence, appellate counsel stated the following: "You have requested that I include in your appeal that DNA was taken from the ski mask and that it did not match yours. Again, this evidence was not introduced at trial, and therefore, it is not an issue that can be raised in a direct appeal." (Petition, Exh. 2 at 5).

The right to the effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Claims alleging ineffective assistance of appellate counsel are reviewed according to the two-part test outlined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Miller v. Keeney,* 882 F.2d 1428, 1433 (9th Cir.1989); *see also Morrison v. Estelle,* 981 F.2d 425, 427 (9th Cir.1992) (finding the standard for assessing the performance of trial and appellate counsel is essentially the same under *Strickland*). Under the *Strickland* framework, petitioner must demonstrate the following to prevail: (1) that appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms; and (2) that petitioner suffered prejudice in that a reasonable probability exists that, but for appellate counsel's unprofessional errors, he would have prevailed on appeal. *Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. 2052. With respect to the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

It is not required, however, that appellate counsel raise every colorable or non-frivolous claim; effective appellate advocacy involves weeding out weaker claims in order to focus on stronger ones. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Miller,* 882 F.2d at 1434. Because petitioner must prove both deficient performance and prejudice, this Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by [petitioner] as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

■ Here, petitioner's *Strickland* claim lacks merit. Although his appellate counsel may have erred in stating that the DNA evidence was not introduced at trial and thus was not an issue cognizable on appeal—as the record clearly shows the DNA evidence was admitted by way of a stipulation—the error does not amount to ineffective assistance. Even if appellate counsel had been aware that the DNA evidence was admitted, petitioner fails to

and fingerprints were lifted from a plastic bag labeled "zip ties" found at the scene of one of the robberies (RT 181, 426, 440), and the fact that some of petitioner's belongings were found in Robert Perce's car along with a stun gun that had been taken from the Ranch House restaurant during the robbery (RT 259–63, 267–76).

explain what, if anything, appellate counsel could have argued on appeal. For example, because the favorable DNA evidence was introduced at trial, there was no reason to include as an issue on appeal any argument that the prosecutor had failed to disclose the DNA test results to the defense. (*See* Ground One, *supra*). Accordingly, the Court finds that petitioner has failed to establish both deficient performance and prejudice within the meaning of *Strickland. See Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir.1996) (counsel's failure to take futile action is not deficient performance); *United States v. Moore,* 921 F.2d 207, 210 (9th Cir.1990) (a lawyer is not ineffective for failing to make a meritless motion); *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir.1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

Pursuant to this *de novo* review, the Court finds that petitioner's claim fails. *Cassett,* 406 F.3d at 623–24. Habeas relief is denied for Ground Two.

## GROUND THREE: THE VENTURA COUNTY SUPERIOR COURT'S DENIAL OF PETITIONER'S HABEAS PETITION "CONSTITUTES A MISCARRIAGE OF JUSTICE."

■ Petitioner alleges in Ground Three that the Ventura County Superior Court's habeas denial constituted a miscarriage of justice because the superior court failed to "inquire into the DNA evidence and its exculpatory value." (Petition at 6).

The Court finds that this claim is without merit. The fact that petitioner was not afforded an evidentiary hearing before his superior court habeas petition was denied does not amount to a constitutional violation. In any event, as discussed *supra*, the parties stipulated at trial that the DNA evidence from the ski mask did not match petitioner's DNA, and the trial court accepted the stipulation. Thus, the DNA evidence was fully before the trial

court. Petitioner fails to explain why, in his habeas proceeding, the Ventura County Superior Court should have made further inquiry regarding such evidence before denying petitioner's habeas application.

Pursuant to this *de novo* review, the Court finds that petitioner's claim fails. *Cassett,* 406 F.3d at 623–24. Habeas relief is denied for Ground Three.

## GROUND FOUR: THE SUPERIOR COURT'S SENTENCING PROCEDURE WAS ILLEGAL.

In Ground Four, petitioner alleges the following: (1) the trial court based its imposition of the upper term on its own finding of aggravating circumstances in violation of petitioner's right to a jury trial; (2) insufficient evidence supported the firearm use finding; and (3) in sentencing petitioner, the trial court violated the "dual use doctrine" under California Penal Code § 1170(b). (Petition at 6; Traverse at 21). Moreover, as discussed *supra*, the Court will also consider the following claims raised in the Second Motion: the trial court failed to make a finding of "personal use of a firearm," and petitioner's appellate counsel was ineffective for failing to raise on appeal the arguments that insufficient evidence supported the "personal use of a firearm" finding and that the trial court failed to make a finding of "personal use."

### A. Sufficient Evidence Supported the "Personal Use of a Firearm" Finding.

First, the Court considers petitioner's contention that the trial court failed to make a finding of "personal use of a firearm." Petitioner raised this claim in his state habeas petitions, and the Ventura County Superior Court rejected it on the basis that "[t]he record clearly states that the [trial court] made the requisite finding

and sentenced accordingly."[3] (Answer, Exh. O at 245). The Court concurs with the superior court's determination as the record unequivocally reflects that the trial court found the "personal use" allegations to be true. (*See* RT 448; CT 159–66). Accordingly, this claim fails.

The Court next addresses petitioner's claim that there was insufficient evidence to sustain the "personal use of a firearm" determination. A habeas petitioner challenging the sufficiency of the evidence to support his conviction may obtain relief only if "it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.2000). If the record supports conflicting inferences, the Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *see also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (*plurality opinion*); *Schell*, 218 F.3d at 1023.

■ Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. *See United States v.* *Jackson*, 72 F.3d 1370, 1381 (9th Cir.1995): *see also Hayes v. Woodford*, 301 F.3d 1054, 1084 (9th Cir.2002). As the Supreme Court has explained, "[i]nferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The reviewing habeas court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. *See United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987).

■ Under *Jackson*, this Court must look to state law to determine what evidence is necessary to sustain the conviction. *See Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781. California Penal Code § 12022.53(b) imposes a sentence enhancement of 10 years when, during the commission of a crime such as robbery, a person personally used a firearm. The firearm "need not be operable or loaded for this enhancement to apply." Cal.Penal Code § 12022.53(b) (2001). For purposes of this section, a firearm means "any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion." Cal.Penal Code § 12001 (2001).[4] The evidence is sufficient to prove

---

3. Because the California Supreme Court and California Court of Appeal issued silent denials of this claim, the Court "looks through" those denials to the Ventura County Superior Court's reasoned decision rejecting petitioner's appeal. *See Ylst*, 501 U.S. at 803, 111 S.Ct. 2590; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000) (district court "look[s] through" unexplained California Su-

preme Court decision to the last reasoned decision as the basis for the state court's judgment).

4. Subdivision (b) of § 12022.53 and § 12001 have undergone minor revisions since the time of petitioner's trial in 2001. *See* Cal.Penal Code §§ 12001, 12022.53(b) (2007).

the use of a firearm where there is "some type of display of the weapon, coupled with a threat to use it which produces fear of harm in the victim." *People v. Dominguez*, 38 Cal.App.4th 410, 421, 45 Cal. Rptr.2d 153 (Cal.App. 2 Dist.1995); *see also People v. Grandy*, 144 Cal.App.4th 33, 42, 50 Cal.Rptr.3d 189 (Cal.App. 2 Dist. 2006) (a defendant uses a firearm by intentionally displaying it in a menacing manner, firing it, or striking or hitting an individual with it). In cases where no gun is recovered, the testimony of the victim describing the gun used during the crime is, by itself, sufficient to sustain the finding that the assailant personally used a firearm. *People v. Williams*, 56 Cal.App.3d 253, 254–55, 128 Cal.Rptr. 408 (Cal.App. 4 Dist.1976).

■ The Court has carefully reviewed the record and finds that, when viewing the evidence in the light most favorable to the prosecution, a rational fact-finder could have reasonably determined beyond a reasonable doubt that petitioner personally used a firearm in the commission of the robberies. Brian Houle, a victim of the Ranch House restaurant robbery, testified that he was familiar with shotguns, and that one of the assailants (the one with blue eyes) was holding a black shotgun with a brown handle when he approached Houle outside of the restaurant. The assailant pointed the shotgun at Houle and told him "Don't move." Houle was forced to go back into the restaurant where he and a fellow coworker, Michael Denney, were pushed to the floor. The assailants tied Houle's and Denney's hands behind their backs. (RT 16–33, 61–64). During the robbery, the man holding the shotgun told Houle and Denney that if they were not quiet, they would "get a bullet in the butt." (RT 36). Denney, who was also familiar with firearms, described the weapon used by the assailant as a sawed-off shotgun. (RT 61–64).

Marilyn Westerman, a victim of the Outback Steakhouse robbery, testified that as she was leaving the restaurant she was confronted by a man pointing a two-foot long, dark-colored gun at her. (RT 93–101). Westerman also described a second assailant, who was holding a silver-colored gun approximately five to six inches in length. (RT 114). According to Westerman, one of the assailants told her something to the effect of, "If you do what we tell you, we won't hurt you." (RT 102). Another victim of the Outback Steakhouse robbery, Matt Roe, testified that he was familiar with guns, and saw that one of the assailants had a sawed-off shotgun with a three-inch-long barrel. During the robbery, the assailant pointed the shotgun at Roe. Roe also testified that the second assailant had a silver-colored handgun. The assailants bound Roe's and Westerman's hands with zip ties. (RT 99–104, 134–51).

On this record, the Court finds that, although no firearm was recovered, the victims' testimony describing the guns and the manner in which they were used during the robberies amounted to sufficient evidence for the trial court to conclude beyond a reasonable doubt that petitioner personally used a firearm within the meaning of § 12022.53(b). Pursuant to this independent review, the Court finds that the state court's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. *See Delgado*, 223 F.3d at 981–82.

To the extent petitioner contends that his appellate counsel was ineffective for not arguing on appeal that insufficient evidence supported the "personal use of a firearm" determination and that the trial court failed to make the "personal use" finding, his claim lacks merit. As discussed above, from the evidence of record, the trial court could determine beyond a

reasonable doubt that petitioner personally used a firearm during the commission of the robberies. Moreover, the record clearly reflects that the trial court made the requisite "personal use" findings before sentencing petitioner accordingly. There is no reasonable probability that petitioner would have prevailed had appellate counsel raised these issues on appeal. Accordingly, petitioner has not demonstrated prejudice under *Strickland.* The Court therefore concludes that the state court's rejection of these ineffective assistance claims was not contrary to, or an unreasonable application of, *Strickland.* (*See* Answer, Exhs. N, O, R, S).

**B. The Imposition of the Upper Term Sentence Did Not Violate the Sixth Amendment**

The trial court convicted petitioner of robbery in counts 2 through 8 (California Penal Code § 211) and found true the allegations that petitioner personally used a firearm in connection with those counts (California Penal Code § 12022.5(a) and § 12022.53(b)). (RT 444, 448). Petitioner was sentenced to a total term of twenty-two years, four months.

The breakdown of petitioner's sentence with respect to the specific charges is as follows: on count 2, the trial court sentenced him to the upper term of five years and imposed a consecutive ten-year term for the § 12022.53(b) firearm enhancement. On counts 3, 4, 5, and 6, the trial court imposed sentences of five years for the base count and ten years for the § 12022.53(b) enhancement, all to run concurrently to the sentence on count 2. On count 7, the court imposed consecutive sentences of one year for the robbery count (which was one-third the midterm sentence) and three years, four months for the § 12022.53(b) enhancement (which was one-third the ten-year enhancement), for a total of four years, four months. On count 8, the court imposed a concurrent sentence

of five years for the base count and ten years for the firearm enhancement. (RT 458; CT 177–78, 180–81). The court imposed three consecutive one-year sentences pursuant to California Penal Code § 667.5(b) for petitioner's three prior convictions for which he served prison terms, and stayed the § 12022.5(a)(1) enhancements as to counts 2 through 8 pursuant to California Penal Code § 654. (RT 10–11, 457–58; CT 177–81).

In support of his claim that the trial court's imposition of the upper term sentence violated his right to a jury trial, petitioner cites *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Supreme Court decided in *Blakely* that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. *Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531. The defendant in *Blakely* had entered a guilty plea, after which he was given a sentence in excess of the statutory maximum on the basis of the trial judge's finding that he had acted with "deliberate cruelty." *Id.* at 300, 124 S.Ct. 2531. The Supreme Court determined that the sentence was improper because the "deliberate cruelty" finding was supported by facts that "were neither admitted by petitioner nor found by a jury." *Id.* at 303, 124 S.Ct. 2531. As explained by the *Blakely* Court, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." *Id.* at 304, 124 S.Ct. 2531. In reaching this determination, the Supreme Court applied the rule set forth earlier in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases

the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301–02, 124 S.Ct. 2531. Following *Blakely*, the United States Supreme Court held in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that the decision in *Blakely* applied to the United States Sentencing Guidelines. The Supreme Court explained that their precedents "make clear that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Booker*, 543 U.S. at 232, 125 S.Ct. 738 (emphasis in original, some internal quotation marks omitted).

Recently, in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), the Supreme Court considered the validity of California's determinate sentencing law ("DSL"), which allows for the imposition of an upper term sentence when the trial judge finds an aggravating circumstance. Relying on *Apprendi*, *Blakely*, and *Booker*, the *Cunningham* Court stated that, because the middle term sentence prescribed in California's statutes is the "relevant statutory maximum," the DSL violates the Sixth Amendment because it "authorizes the judge, not the jury, to find the facts permitting an upper

term sentence."[5] *Cunningham*, 127 S.Ct. at 868, 871.

After the *Cunningham* decision was issued, the California Supreme Court held that, under the DSL, "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." *People v. Black*, 41 Cal.4th 799, 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007) ("*Black II*"). As explained by the state court in *Black II*, in situations where "one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, . . . the upper term sentence is the 'statutory maximum'" and the "Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances." *Id.*

■ Here, the trial court selected the upper term sentence on count 2 based on the following aggravating circumstances: (1) the crimes involved violence, some bodily harm, the threat of bodily harm, as well as "a certain degree of callousness and cruelty"; (2) the manner of the crimes indicated planning, sophistication, and some professionalism; (3) petitioner had numerous prior felony convictions; and (4) petitioner was on parole at the time of the offense.[6] (RT 457). As discussed above,

---

**5.** The Ninth Circuit has held that neither *Apprendi* nor *Blakely* are retroactively applicable to cases on collateral review. *See Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir.2005); *Rees v. Hill*, 286 F.3d 1103, 1104 (9th Cir. 2002). Since *Cunningham* relied on *Blakely* and *Apprendi*, it appears that *Cunningham* likewise would not apply retroactively to cases on collateral review. Petitioner's conviction became final in 2003, which was subsequent to *Apprendi* but before the issuance of *Blakely* and *Cunningham*. It thus appears that only *Apprendi* applies to petitioner's claim. As explained in more detail *infra*, however, petitioner has not established any

Sixth Amendment violation with respect to the imposition of his upper term sentence. Accordingly, the Court finds it unnecessary to address the issue of retroactivity because, even if all three decisions, *Apprendi, Blakely*, and *Cunningham*, were applicable in petitioner's case, the sentencing claim would still fail.

**6.** As mentioned above, petitioner waived his right to a jury trial on all counts. Thus, a question arises as to whether the rule in *Apprendi* prohibiting judicial fact-finding is implicated when a defendant consents to a court trial. The Court finds it unnecessary to address this issue, however, because in this case the imposition of the upper term sentence did

the Supreme Court held in *Apprendi* that prior convictions are excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *see also Cunningham*, 127 S.Ct. at 868 ("[T]he DSL violates *Apprendi*'s bright-line rule: *Except for a prior conviction*, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' ") (emphasis added) (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). Pursuant to *Apprendi*, as well as the California Supreme Court's holding in *Black II*,[7] the Court finds that the imposition of the upper term was not unconstitutional because the sentence was based in part on petitioner's prior felony convictions.[8]

Although the trial court also found additional aggravating factors, the fact of petitioner's prior convictions was sufficient by itself to expose petitioner to the upper term. Thus, because the upper term sentence was supported by a fact that satisfies the Sixth Amendment, the trial judge was free to exercise his discretion in sentencing petitioner to the upper range.

Next, to the extent petitioner contends that the trial court violated California Penal Code § 1170(b)[9] in imposing the sentence, this claim must fail because matters relating to state sentencing law do not raise a federal constitutional question. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) (finding decision to impose consecutive sentences purely a matter of state criminal procedure); *Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (whether offense qualified as "serious felony" for sentence enhancement purposes was a question of state sentencing law and thus not suitable for federal habeas review). It is well established that habeas relief is not available for an alleged error in the interpretation or application of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).[10]

For the foregoing reasons, the Court concludes that the state court's rejection of petitioner's sentencing claims was not contrary to, or an unreasonable application of, Supreme Court precedent. *See Delgado*, 223 F.3d at 981–82. Accordingly, habeas relief is not warranted.[11]

---

not result in a violation of petitioner's Sixth Amendment rights.

7. The Court must accept the California Supreme Court's interpretation of state law that only one aggravating factor need be found to expose a defendant to the upper term sentence. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) ("[A] state court's interpretation of state law ... binds a federal court sitting in habeas corpus."); *Holgerson v. Knowles*, 309 F.3d 1200, 1202 (9th Cir.2002) (federal habeas courts are generally "bound by California's interpretation of its state law").

8. The record reflects that petitioner waived his right to a jury trial and admitted the truth of three prior convictions. (RT 10–12).

9. At the time of petitioner's sentencing hearing, § 1170(b) stated in relevant part: "The

court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

10. Similarly, to the extent petitioner contends that the trial court erred in imposing the sentences pursuant to the firearm enhancements, and erred in imposing consecutive, as opposed to concurrent, sentences, those claims pertain solely to state sentencing law and are thus not cognizable here. *See Cacoperdo*, 37 F.3d at 507.

11. On February 1, 2008, petitioner filed Objections to the Report and Recommendation ("R & R") issued on December 26, 2007. In the Objections, petitioner contests certain facts set forth in the California Court of Appeal's factual summary. (*See* Objections at 3–5; R & R at 2–5). In considering petitioner's grounds for relief, the Court relied on the

## VI

### *RECOMMENDATION*

It is recommended that the District Court issue an Order: (1) adopting this Final Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing this action with prejudice.

record, and not on the state court's factual summary, to ascertain the relevant facts. (*See* R & R at 2, where Court states: "To the extent that an evaluation of petitioner's individual claims depends on a further examination of the trial record, the Court herein has made an independent evaluation of the record specific to those claims."). The factual summary by the California Court of Appeal was included in the R & R only to give an overall context to the claims raised in the Petition. Accordingly, the Court finds petitioner's objections to the state court's factual summary unavailing.

It also appears that petitioner asserts in his Objections a new claim challenging the sufficiency of the evidence underlying his robbery conviction, along with a new claim that his appellate counsel was deficient for failing to raise on appeal the insufficiency of the evidence argument. (*See* Objections at 6–28). A district court has the discretion to consider or not consider a claim raised for the time in the objections. *See Brown v. Roe*, 279 F.3d 742, 745–46 (9th Cir.2002). In this case, the Court exercises its discretion to not consider the newly raised claims' Although the Court recognizes petitioner's *pro se* status, petitioner nevertheless had ample opportunity to present these claims at an earlier time, such as in an amended pleading, but failed to do so. The Court observes that in petitioner's first and second motions to amend filed on respectively, February 28, 2007, and April 9, 2007, petitioner never indicated that he sought to challenge the sufficiency of the evidence concerning his robbery conviction, or his appellate counsel's failure to raise that claim on appeal. Moreover, the new claims are not "novel" and do not rely on any recent change in the law such that petitioner's delay in asserting them should be excused. *See Brown*, 279 F.3d at 745 (finding that district court abused its discretion in not considering *pro se* petitioner's objections that asserted a "relatively novel claim" that relied on a "relatively new statute").

Petitioner further asserts in the Objections that, contrary to the Court's conclusion, his claim alleging that his sentence violates California Penal Code § 1170(b) does state a federal question because it implicates his liberty interest regarding the correct application of sentencing laws. (*See* Objections at 53). Petitioner goes on to argue that the trial court violated § 1170(b) and committed constitutional error by relying on the firearm use finding to enhance his sentence as well as to impose the upper term. (*See* Objections at 53–54). To the extent petitioner asserts a due process violation with respect to his sentence, his claim fails. As discussed in greater detail *supra*, the trial court did not improperly rely on the firearm finding to justify the upper term Rather the trial court based the upper term on the fact of petitioner's prior convictions, his parole status at the time of the offense, and the circumstances of the commitment offense (such as the violent nature of the crimes, as well as the fact the crimes indicated sophistication and planning) Accordingly, petitioner has failed to demonstrate any fundamental unfairness concerning his sentence that amounted to a due process violation. *See Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir.1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). As for petitioner's other arguments asserted in the Objections, the Court finds that they are sufficiently addressed herein and thus require no further discussion.